Eshelman Estate.

Argued May 29, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused July 24, 1952.

*William M. Musser, Jr.,* with him *Appel, Ranck, Levy & Appel,* for appellant.

*Francis J. Gafford,* Deputy Attorney General, with him *Harold E. Martin* and *Robert E. Woodside,* Attorney General, for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, June 24, 1952:

The sole question raised on this appeal is whether the gifts of $120,000 worth of stock transferred from decedent, John W. Eshelman, Jr., to certain donees within one year of his death were taxable under the Pennsylvania Inheritance Tax Act of June 20, 1919, P. L. 521.

Section 1 (c) of the Act, as amended, imposes a tax upon the transfer of any property by a resident where that transfer is made in contemplation of death of the grantor. It further provides: "If such transfer is made within one year prior to the death of the grantor . . . of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, it shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this clause." We have previously held that the question of whether a transfer has been made in contemplation of death is one of fact for the auditing judge whose findings have the effect of a jury's verdict and, when they are supported by competent evidence or reasonable inferences therefrom, they will not be disturbed on appeal: *Carson Estate,* 352 Pa. 304, 42 A. 2d 592; *Jacobs's Trust Estate,* 320 Pa. 539, 183 A. 49. The learned auditing judge, after hearing the oral testimony offered by appellant, John J. Eshelman, the son of decedent and one of the donees, did find, as a fact, that decedent had made the transfer of material part of his estate in contemplation of death. The court en banc thereupon entered an order dismissing appellant's appeal from the filing of the transfer inheritance tax appraisement and this appeal followed.

Decedent died November 30, 1950, at the age of 80 of a coronary thrombosis after he had been operated upon for the alleviation of a tumor condition. He first underwent treatment for this ailment in October, 1949, at which time it was diagnosed as cancerous. Although decedent was not informed of this fact, he was told that "he had something that required careful observation" and ". . . should be carefully followed." He was released from the hospital on November 7, 1949, but was

ordered to return on December 7th, for further examination.

For many years prior to his illness decedent had been co-owner with his son of a burlap and cotton bag manufacturing business which he had founded in 1919 and incorporated in 1947. Until December 5, 1949, two days before he returned to the hospital, decedent and his son were the sole owners of all the capital stock of the corporation, each possessing 1000 shares of common stock and 1500 shares of preferred stock. On December 5, 1949, decedent made the first of the two transfers which the Commonwealth has taxed, giving 300 shares of preferred stock in his corporation to each of his daughters and 60 shares to his son. He was released from the hospital on December 13th, and five weeks later, on January 20, 1950, he made the second transfer of stock consisting of 60 shares to each of his daughters and 40 shares to his son. In addition he gave 60 shares of the stock to each of his daughter's children and 40 shares to each of his son's children.

Appellant, in his attempt to rebut the statutory presumption, has contended that these gifts were only part of a plan of giving which he avers the decedent had followed since 1936 and that they therefore were not given in contemplation of death. However, the evidence does not support this theory. Although decedent did give to his children and grandchildren gifts totalling $157,523.48 during the thirteen years preceeding the first transfer of stock in December, 1949, these gifts, with the exception of an automobile to one daughter, were entirely of cash and defense bonds. The gifts made by decedent in the last ten months of his life, however, consisted solely of shares of stock in his corporation. Furthermore, this stock was valued at $120,000 or roughly the equivalent of all the gifts made by decedent during the preceeding thirteen years. In

addition, by the transfers of this stock, the control of the corporation was turned over to decedent's children with the majority of the stock now held by decedent's only business associate, his son. In view of the fact that his gross taxable estate was fixed at $736,400.31, the transfers of stock in the corporation to the donees at this time, rather than property of equal value in another form, shows clearly that decedent did not give the stock merely because of its monetary value but because he wished the donees to have control of his business. The transfers of stock, therefore, clearly were not part of any plan of gifts which decedent might have conceived many years before.

Decedent was a man of 80 years of age who must have realized that he was nearing the end of his life. He knew that he was seriously ill and that he was confronted with the probability of several operations. Faced with these circumstances he relinquished control of the chief asset of his estate to his heirs. Under all these facts the learned auditing judge properly concluded that decedent had made the transfer of stock in contemplation of death. This finding was confirmed by the court en banc and we will not now disturb it.

Decree affirmed, costs to be paid by appellant.