**Hiller Estate**

*Bernard F. Gray,* for appellant.
*Samuel Glantz,* for respondent.

SATTERTHWAITE, P. J., October 23, 1970.— Two questions are presented in this appeal from the appraisement and assessment of inheritance tax: (1) Does the evidence sufficiently rebut the statutory presumption that decedent's transfer of her residence realty to the names of herself, her son and the son's wife, and the survivor of them, less than one year prior to her death, was a transfer taxable on the full value as one in contemplation of death? (2) If the presumption has been rebutted so that the entire value is not taxable, what fraction, one-third or one-half, is includible under the coownership provisions of the deed?

The factual situation is not in dispute. Decedent, a widow in her sixties, lived alone in her residence in Langhorne Manor Borough following the death of her husband in 1961 and apparently was gainfully employed until late in 1965 when she either left, or was discharged from, her last significant employment as secretary in a law office. She thereafter had difficulty in finding suitable employment and became concerned about her financial future, fearing that she might be forced to sell her residence and use up the

proceeds for her own support and maintenance in supplementation of the inadequate Social Security benefits which then constituted her only income.

In May of 1966, her son and his family disposed of their own home in Levittown and moved into decedent's residence under an arrangement pursuant to which the son proposed to remodel the house at his own expense to provide a separate apartment for decedent on the upper floor, a project which required substantial modification, if not actual replacement, of the entire roof of the structure and the installation of entirely new facilities in connection with the independent use thereof. He also proposed to repair and renovate the existing structure and to assume the taxes and other carrying charges for the whole property.

In order to carry out these proposals, a mortgage loan of $5,000, later increased to $8,000, was necessitated, and the lending institution required that the son's personal obligation be furnished to insure the repayment thereof. Accordingly, it was at least suggested, if not actually required by the bank officials (the evidence is equivocal as to exactly which) that for the protection of the interests of all concerned, decedent transfer title to the residence property into the joint names of herself, her son and the latter's wife, with right of survivorship, and that all three parties execute the mortgage and, presumably the accompanying bond. This, in fact, was done on February 1, 1967, and the son did carry out the remodelling operation for decedent's separate apartment therein, as well as thereafter assume and discharge full responsibility for current maintenance, repairs and other expenses of the household and family including decedent.

At all times during the discussions leading up to the transfer in question on February 1, 1967, dece-

dent was in apparent good health except for headaches and other minor problems, such as wax in her ears. She was not under the care of any physician. She expressed interest in and looked forward to the time when she could occupy her separate apartment. Unfortunately, however, she suffered what was medically described as a sudden and previously unanticipated cerebrovascular accident and died a day or two later on January 4, 1968, only a week before her planned actual occupancy of the substantially completed separate apartment.

In the inheritance tax appraisement appealed from, the entire value of the residence was included at the figure of $23,000. Personal property, not here in issue, rated at $2,065.59 constituted the balance of the gross estate. The son as executor paid tax on the basis that only one-third of the $23,000 realty valuation was taxable and appealed as already noted from the assessment of tax on the other two-thirds. No question of the $23,000 figure as a proper valuation of the entire property has been raised.

Section 222 of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, 72 PS §2485-222, provides as follows:

"A transfer conforming to section 221(a) [i.e., one made without valuable and adequate consideration in money or money's worth], and made in contemplation of the death of the transferor, is subject to tax under this act. A transfer shall not be deemed or held to have been made in contemplation of death if made more than two (2) years prior to the death of the transferor, but unless shown to the contrary, shall be deemed to have been in contemplation of death if it is of a material part of the transferor's estate and is made within two (2) years prior to the death of the transferor.

"A transfer is made in contemplation of death when the dominant or impelling motive, but not necessarily the sole motive of the transferor, was prompted by the thought of death, without which motive the transfer would not have been made. The term is not restricted to that expectancy of imminent death which actuates the mind of a person making a gift causa mortis."

Certainly, for one reason appearing in the record, and possibly for two, the Commonwealth was clearly in error in assessing tax in this case on an appraisal of the subject property in its entirety and at full value. The evidence would at least seem to indicate that decedent's transfer of a fractional interest in the premises to her son was for a good and valuable consideration, to wit, his giving up his own home and his assuming personal liability for the improvement and continued maintenance of the residence for decedent's benefit. Since the case was not litigated on this theory, however, and since there could conceivably be a factual issue not developed by the evidence as to whether this constituted "adequate" consideration under the statute, we prefer not to base our decision on this ground.

In any event, the undisputed facts and circumstances of the transfer unquestionably do demonstrate that it was made by decedent for motives of continued life, not in contemplation of death, and that her sudden and untimely demise less than a year later was sheer happenstance and in no sense predictable or anticipated. She clearly was either at least advised, and possibly actually compelled, to put the property, or an interest therein, over into the name of her son in order to obtain the mortgage loan required to permit renovation thereof for her continued occupancy. Had she not carried out this arrangement and so

obtained the benefit of these funds, the evidence indicates the strong probability that she would have been required to dispose of the property entirely. She was in good health except for trivial complaints of minor indispositions. She neither had reason to anticipate her early death, nor, under the evidence, did she, in fact, have death in mind.

In short, the son has successfully borne the affirmative burden of rebutting the statutory presumption of section 222 above quoted. Compare Heacock Estate, 43 D. & C. 2d 191, 17 Bucks 200, 17 Fiduc. Rep. 599 (1967); Kummer Estate, 19 Bucks 147, 19 Fiduc. Rep. 503 (1969).

The other question for decision, determination of the amount of the fractional interest of the subject realty which is taxable under the joint ownership provisions of section 241 of the statute, 72 PS §2485-241, is a much closer question, but established case law points the way to the correct solution.

By the deed of February 1, 1967, decedent conveyed title to the residence property in question to "Frances Hiller [decedent] and Albert E. Hiller, III [her son], and Jacqueline Hiller, his wife," the habendum clause running "unto said Grantees, and the survivor of them and the heirs and assigns of such survivor." The question is: Did this deed create a one-third undivided interest in each of the named parties, or did the son and his wife, as one unit by the entireties, take a half interest leaving the decedent with the other half?

The law is well settled that a conveyance of real or personal property to a husband and wife, without more, vests in them an estate by the entireties with all legal incidents: Carnevalino Estate, 435 Pa. 366 (1969). Such an estate has all the incidents of a joint tenancy at common law, to wit, unity of interest, title, time and possession, and, in addition, it also

possesses the further attribute of unity of husband and wife as one person in the law; each spouse holds the entirety, subject only to the equal holding of the other, per tout, et non per my: Madden v. Gosztonyi Savings and Trust Company, 331 Pa. 476, 481-82 (1938). Since the Married Women's Property Acts, of course, it is possible for a wife to hold title independently or otherwise to be treated as a person separate and distinct from her husband if the parties so intend, and such intention may be inferred where the conveyance is to three or more named grantees, including a husband and wife without designating them as such, and the manifest purpose is to create equality, or particularly specified fractional interests, among all of them. See, e.g., Kleinschmidt Estate, 362 Pa. 353 (1949); Weimer Estate, 7 Fiduc. Rep. 365 (1956); Burkert Estate, 41 D. & C. 2d 467 (1966), 16 Bucks 428, 17 Fiduc. Rep. 210.

Where, however, two of the three or more parties are expressly designated as husband and wife, that expression of relationship must be given some significance, and the usual inference of an entireties estate will arise. Heatter v. Lucas, 367 Pa. 296 (1951), 80 A. 2d 749, is directly in point, even with respect to the further circumstance that the conjunction "and," interposed between the names of decedent and her son, would be unnecessary if all three parties were intended to take equally and individually. As in Heatter, the first "and" separated the grantees into two units: "Frances Hiller *and* Albert E. Hiller, III and Jacqueline Hiller, his wife"; decedent was one as an individual, and the son and his wife constituted the other as tenants by the entireties: Heatter, supra, 367 Pa. at 302. See also Wally v. Lehr, 2 D. & C. 2d 722 (1954).

The addition of the survivorship language by the habendum clause in the instant case adds nothing

either way in connection with the instant problem. It is as consistent with an entireties estate as with a joint estate with right of survivorship. Compare Burns Estate, 40 D. & C. 2d 64, 67-68 (1966), 16 Fiduc. Rep. 349, 352-53.

### FINAL ORDER

And now, October 23, 1970, for the reasons stated in the foregoing opinion, it is hereby ordered and decreed that the within appeal be sustained in part and denied in part and that the matter be remanded to the register with directions that he revise the appraisement and assessment of tax appealed from so as to include in the former a half interest only in the real estate in question.