Fawcett Estate.

Argued September 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Harold V. Fergus,* with him *Scott H. Fergus,* and *Fergus, Martin and Fergus,* for appellants.

*Vincent J. Dopko,* Deputy Attorney General, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, November 30, 1972:

On July 26, 1969, F. K. Fawcett, a wealthy, eighty-seven-year-old Washington County industrialist, was murdered in his home. Despite his age, Mr. Fawcett, who had been a widower for some years, was still actively engaged in business and community affairs, serving as president of Penn Manufacturing Company at the time of his death.

Late in 1965, while serving on the board of the local Y.M.C.A., Mr. Fawcett met Mrs. Ann Shuman, a thirty-eight-year-old widow employed by the Association. Their relationship remained casual until March of 1967 when Mr. Fawcett developed a romantic interest in Mrs. Shuman and became a frequent guest at her home. Mr. Fawcett visited Mrs. Shuman at least twice a week until the time of his death and offered to marry her many times during that period. Although Mrs.

Shuman consistently refused all marriage proposals, Mr. Fawcett was undaunted and continued to visit her, propose to her and give her substantial monetary gifts. It is the latter manifestation of Mr. Fawcett's affection that is the subject of this appeal.

In the two years preceding his death, Mr. Fawcett gave Mrs. Shuman over $177,000. When the executors of his estate filed the Pennsylvania Inheritance Tax returns they listed the gifts as transfers and did not include the amount in the taxable estate. The Commonwealth revised the appraisement and included the value of the gifts in the taxable estate under the provisions of Article II, Section 222 of the Inheritance and Estate Tax Act of 1961,[1] contending that the gifts were made in contemplation of death. The executors appealed the Commonwealth's ruling to the Orphans' Court Division of the Washington County Court of Common Pleas, which determined, after a hearing, that the gifts to Mrs. Shuman and her daughter were made in contemplation of death as defined in the statute and were properly included in the decedent's taxable estate. This appeal followed and we reverse.

Although there have been numerous lower court opinions interpreting and applying Section 222 of the

---

[1] Act of June 15, 1961, P. L. 373, Art. II, §222, 72 P.S. §2485-222:

"A transfer [made without valuable consideration] and made in contemplation of the death of the transferor, is subject to tax under this act. A transfer . . . unless shown to the contrary, shall be deemed to have been in contemplation of death if it is of a material part of the transferor's estate and is made within two (2) years prior to the death of the transferor.

"A transfer is made in contemplation of death when the dominant or impelling motive, but not necessarily the sole motive of the transferor, was prompted by the thought of death, without which motive the transfer would not have been made. The term is not restricted to that expectancy of imminent death which actuates the mind of a person making a gift causa mortis."

Inheritance and Estate Tax Act of 1961,[2] this is the first time the provisions of that section have been before this Court.[3] Nevertheless, we are not totally without guidance in determining what transfers should be considered as made "in contemplation of death" under the 1961 Act. First, the Act itself defines a transfer in contemplation of death as one in which "the dominant or impelling motive, but not necessarily the sole motive of the transferor, was prompted by the thought of death." Secondly, the official comments to Section 222 of the 1961 Act state that the definition of "transfer made in contemplation of death" is suggested by *United States v. Wells*, 283 U.S. 102 (1931).

In *Wells* the United States Supreme Court interpreted a "contemplation of death" provision of the Federal Estate Tax Act similar to Section 222 of the Act of 1961. The Court began by noting that "the

---

[2] *See, e.g., Hiller Estate*, 50 Pa. D. & C. 2d 678 (1970) ; *Cooper Estate*, 48 Pa. D. & C. 2d 404 (1970) ; *Eckert Estate*, 12 Chest. 318 (1964).

[3] We are reminded by the Commonwealth that the 1961 Act presently under consideration broadened considerably the number of transfers includable in the taxable estate as made "in contemplation of death". Under the prior law, Act of June 20, 1919, P. L. 521, §1(c), *as amended* by the Act of May 16, 1929, P. L. 1795, §1, only transfers made within one (1) year of death were presumed to be in contemplation of death. Furthermore, since the Act did not contain a working definition of what constitutes "in contemplation of death", one had been supplied by the courts. The most frequently repeated test was first announced in *Wanamaker's Estate*, 8 Pa. D. & C. 569 (1924). This test, which was rather restrictive, set out two requirements which had to be met before a transfer would be considered in contemplation of death: "[F]irst, that death is contemplated, not as an event which although certain to occur will only occur in the indefinite future, but as an event that is, in the circumstances, definitely imminent in the near future ; and, second, that this contemplation of death exists as the impelling motive of the transfer or gift, which transfer is intended to be in lieu of a testamentary devise." *Wanamaker's Estate*, 8 Pa. D. & C. at 573.

words 'in contemplation of death' mean neither that knowledge which all men have that ultimate death is inevitable, nor such an expectancy of death as is required in a gift *causa mortis.*" 283 U.S. at 103. The Court recognized that the statutory presumption is rebuttable and that neither the death of the donor shortly after making the gift nor the old age of the donor at the time of the gift is sufficient to sustain a finding that the gift was made in contemplation of death. Ultimately, the determinative factor must be found in the transferor's motive. If the transfer is motivated by purposes associated with life rather than by the thought of death, the presumption is rebutted and the transfer should not be taxed as one made in contemplation of death. On the other hand, it is not necessary to find that the fear of impending death was the only cause for the transfer or that the transferor felt that death was near at hand. "There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in light of his bodily and mental condition and thus give effect to the manifest purpose of the statute." *United States v. Wells,* 283 U.S. at 119.

In the instant case, two witnesses testified on behalf of the estate. Dr. Graham, Mr. Fawcett's personal physician, gave testimony about the decedent's health and medical history until the time of his death. Mrs. Ann Shuman, the primary donee of the gifts in question, testified concerning the circumstances surrounding the giving of the gifts and Mr. Fawcett's expressed intent at the time the gifts were made.

Dr. Graham, who had not only been Mr. Fawcett's physician for more than fifteen years, but was also a neighbor of the decedent, testified that he considered the decedent's health to be good for a man of his advanced age. He further testified that the decedent had fairly stable blood pressure and that his pulse was

slow, regular and of good volume. According to Dr. Graham, Mr. Fawcett had no alarming physical problems although two recurring complaints brought him to the doctor's office on several occasions during the last two years of his life. The first complaint was a feeling of pressure in the head and dizziness. The doctor testified that he believed the problem was psychosomatic and tension-oriented since it generally occurred at the end of the working day while the decedent was at his office.[4] Mr. Fawcett's second complaint, a sexual matter, is of a more delicate nature and would not be mentioned except for its extreme relevance in rebutting the presumption that the gifts were made in contemplation of death. The doctor testified that beginning in 1967 Mr. Fawcett repeatedly inquired whether or not there was something the doctor could prescribe that might stimulate his sexual potency. The doctor also testified that the best he could do was give the decedent some vitamins and try to treat him "psychologically" in order to let him go from the office satisfied."

Despite the medical futility of Mr. Fawcett's request, his desire to regain his sexual prowess, when coupled with his repeated proposals of marriage to Mrs. Shuman, is strong evidence that the substantial gifts made to her during the same period were *not* made in contemplation of death. Indeed, it is difficult to discern what more an eighty-seven-year-old millionaire could do to establish the type of "life-oriented" motive required to rebut the presumption contained in the statute.

Mrs. Shuman, the object of the decedent's affection and the principal donee of the gifts in question, also

---

[4] On one occasion the decedent suffered a more severe dizzy spell and was hospitalized for four days for some tests. Not only were the tests all negative, but the decedent, who could not wait to get out of the hospital, "practically discharged himself" at the end of the first day.

testified at the hearing. Although Mrs. Shuman consistently refused the decedent's proposals of marriage, she stated that she was very fond of him. Concerning the circumstances surrounding the gifts, she testified that they began in 1967 when the decedent would give her $50 or $100 on various occasions simply because he wanted her to have it. She also testified that there was a $1,500 birthday gift and a $3,500 new car given during that period. She stated that the decedent gave her a $100,000 savings certificate on July 1, 1968, stating that he wanted her to quit work and live off the interest. She further testified that the decedent knew she had back trouble, which sometimes made working painful, and he wanted her to have the money so she could quit work immediately. Mrs. Shuman also testified that in 1969 the decedent gave her $37,500 so she could build a new home and gave her daughter and son-in-law $31,500 because he was fond of them and wanted them to have a home.

The Commonwealth argues that Mrs. Shuman's testimony that the decedent discussed the provisions of his will with her on several occasions establishes that the gifts were made in contemplation of death. The Commonwealth's contention would be more persuasive if the discussions of the decedent's will had centered on proposed bequests involving Mrs. Shuman, especially if there was evidence to show that the gifts were being made in lieu of testamentary disposition. However, no such showing was possible here because the will provisions discussed by the decedent did not even involve Mrs. Shuman. Mr. Fawcett left the bulk of his estate in trust, with the income to be distributed in specific proportions to a number of named churches and charities. Mrs. Shuman testified that several times when the decedent was thinking of altering the proportionate distribution of the trust income among the charities, she would write down the percentages to be given each

charity as he would recite them and then change the percentages if he so desired. There is nothing in Mrs. Shuman's testimony which even remotely suggests that the decedent's concern with the charitable disposition of his estate had any influence on the size or timing of his inter vivos gifts to Mrs. Shuman. Nor can it be inferred, as the Commonwealth suggests, that the gifts to Mrs. Shuman were made in contemplation of death merely because on one occasion she promised the decedent that she would maintain his grave and put flowers on it after he was gone.

The statute creates a presumption that all gifts given within two years of death were made in contemplation of death. The burden is on the estate to rebut that presumption and each case must be considered on its own facts. As we stated in *Eshelman Estate,* 371 Pa. 400, 402, 89 A. 2d 775 (1952), "the question of whether a transfer has been made in contemplation of death is one of fact for the auditing judge whose findings have the effect of a jury's verdict and, *when they are supported by competent evidence or reasonable inferences therefrom,* they will not be disturbed on appeal." (Emphasis added.) Implicit in that statement, however, is the power retained by this Court to review the auditing judge's decision to determine if it is supported by the evidence.

In *United States v. Wells,* the United States Supreme Court adopted the following standard of evidentiary review: "The presumption created by the statute that the transfers in question were made in contemplation of death cannot stand against ascertained and proven facts showing the contrary to be true. The best evidence of the decedent's health at the time the transfers were made is the statement of his doctor. The best evidence of the decedent's state of mind at that time and the reasons actuating him in making the transfers are the statements and expressions of the

decedent himself, supported as such statements are by all the circumstances concerning the transfers." 283 U.S. at 113.

Although the decedent was eighty-seven years old, his doctor testified that at the time he was murdered he was in excellent health for a man his age. It is also clear from the testimony at the hearing that the decedent was active socially and in business at the time of his death. Most importantly, the testimony at the hearing clearly shows that the dominant motive behind the decedent's gifts to Mrs. Shuman and her daughter was life-oriented rather than in contemplation of death. The lower court erred in holding that the estate had not produced evidence sufficient to rebut the statutory presumption where all the evidence tended to show a consistent, life-oriented purpose attributable to all the gifts.

Decree reversed. Each party to pay own costs.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent believing that the record supports the orphans' court adjudication that the estate failed to meet its statutory burden of proving that the substantial gifts (in excess of $117,000) made by the 87-year-old donor-decedent within two years of his death were not made in contemplation of death. I would affirm the orphans' court's decree.

Mr. Justice EAGEN joins in this dissenting opinion.