## Snyder Estate

*Carl Rice*, of *Rice & Rice*, for appellant.
*Louis Cohen*, for Commonwealth.

KIVKO, *P. J.*, January 5, 1976—This is an appeal from an inheritance tax assessment by the Commonwealth on the estate of Lawrence H. Snyder. After a hearing at which testimony was presented, the court made the following

### FINDINGS OF FACT

1. Lawrence H. Snyder, a resident of Lewis Township, Northumberland County, Pa., was in his eightieth year of life in 1968.

2. Immediately prior to March 27, 1967, Lawrence H. Snyder was the owner of certain farm land in Northumberland County, Pa.

3. Leon R. Snyder, the only son of Lawrence H. Snyder, lived with his family on said farm continuously since 1951, Leon R. Snyder having also resided there before his marriage in the same year.

4. Leon R. Snyder worked on said farm continuously since 1951 for a base pay of $25 per week. In the last several years, such payment was augmented by proceeds of the farm's hog business.

5. Lawrence H. Snyder drew his last will and testament March 24, 1967, devising and bequeathing his entire estate to his only son, Leon.

6. Three days after making his will, that is on March 27, 1967, Lawrence H. Snyder by deed, without consideration, conveyed the farm in question to Leon R. Snyder.

7. At the time of the conveyance, Lawrence H. Snyder was in excellent health both mentally and physically with the exception of being afflicted with advanced osteoarthritis, a nonfatal disease.

8. On February 25, 1968, Lawrence H. Snyder broke his hip in a fall at his home. This injury incapacitated Mr. Snyder, making it impossbile for him to walk. Further, he became depressed with his misfortune and need to be dependent upon others.

9. On June 17, 1968, 15 months after the execution of the aforementioned deed, Lawrence H. Snyder committed suicide by self-strangulation.

## DISCUSSION

Inter vivos transfers of property without valuable and adequate consideration in money or money's worth at the time of the transfer are subject to inheritance tax if they fall within one of the several

categories set up by the Inheritance Tax Act of June 15, 1961, P.L. 373, art. I, secs. 101, et seq., 72 P.S. §§2485-101, et seq. The case here presented deals with two separate and distinct statutes, conformance with either being enough to make the transfer in question taxable.

The first of these statutory directives would find a transfer without consideration liable for inheritance tax if such transfer was made in contemplation of death. To be so considered, a transfer of property must be (a) of a material part of the transferor's estate; (b) made within two years of the date of death of the transferor; and (c) dominantly motivated by the thought of death on the part of the transferor. If these conditions are met, then a rebuttable presumption in favor of a gift in contemplation of death is established and the burden of going forward is on the decedent's estate: Act of June 15, 1961, P.L. 373, art. II, sec. 222, 72 P.S. §2485-222.

In the case at bar, no argument is made that the transfer was not within the two-year period, the first of the three criteria is, therefore, established. As to the guidelines for the second qualification, the percentage of an estate which is considered to be material part thereof, is in dispute. The court in In re Hollinger's Estate, 29 D. & C. 2d 602, 13 Fiduc. Rep. 331, 58 Lanc. 315 (1963), held that $6,000 in gifts were material when the total estate involved was $232,000. This $6,000 figure is between two percent and three percent of the total estate. On the other hand, a gift of $33,000, which was 12½ percent of decedent's estate, has been found not to be a material part of said estate and thus escaped taxability: Miller Estate, 10 Fiduc. Rep. 353 (1960). However, a determination of whether the gift in our

present fact situation is to be considered a material part of decedent's estate need not be made in order to come to a reconciliation of our case. This is true because the answer to our dilemma can be found in the third requirement for a gift in contemplation of death, that is, that the transfer was motivated by a thought of death without which no transfer would have been made.

Looking to this aspect of the case, we see that Lawrence H. Snyder was 79 years old when the transfer in question took place. At that time, he was in good spirits and fine health for a man of his age. While it is true that he suffered from osteoarthritis which made it difficult for him to get around, it is equally true that such disease was known to him to be nonfatal. Further, the discomfort which he knew by reason of such ailment was mitigated by treatment by a medical specialist.

At the time of the deed to his son, Leon, Lawrence Snyder was living with his son and his son's family at the property in question. Leon had lived on the land prior to 1951 and his wife and his family had resided there continuously after that date. Leon Snyder had worked daily with his father on the farm, receiving for most of the years a minimal salary of $25 per week. (This salary being augmented in the last few years with income from the farm's hog business.) On March 24, 1967, decedent made out a will naming Leon Snyder as his sole heir and on March 27, 1967, he executed a deed to his farm to Leon without consideration. This deed, three days subsequent to the will, says the Commonwealth, manifests that decedent was motivated by a desire to divest himself of the property in contemplation of his death. With this contention, the court cannot be in accord.

The most quoted case which gives a definition of what is a gift in contemplation of death is United States v. Wells, 283 U.S. 102, 115-17, 51 S. Ct. 446, 75 L.Ed 867, 874-75 (1931):

"The reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. The provision is not confined to gifts causa mortis . . . The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax . . . As a condition of body or mind that naturally gives rise to a feeling that death is near . . . is most likely to prompt such a disposition to those who are deemed the proper objects of his bounty, the evidence of the existence or nonexistence of such a condition at the time of the gift is obviously of great importance in determining whether it is made in contemplation of death . . . It is contemplation of death, not necessarily contemplation of immediate death . . . Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as funishing a decisive test, for sound health and purposes associated with life, rather than death may motivate the transfer."

Could it be said that Lawrence Snyder was simply trying to avoid such tax by his transfer while alive? Without more, this conclusion would be possible, but when one considers the other factors involved in this case, such a position is untenable.

First, let us consider that Mr. Snyder was neither suffering from a fatal malady at the time of the transfer nor did he die from such a natural cause. Rather, decedent had but a nonfatal disease at the time of the deed and died by his own hand as a result of a suicide which resulted from a depression in-

duced by an accident which occurred almost a year after the transfer. In addition, one should be aware that such death was 15 months after the execution of the deed. There is expert testimony on the record that suicide is not the type of action which is planned 15 months in advance. Throughout the cases that have rebutted the presumption of a gift in contemplation of death, much emphasis has been placed on the actual good health of the transferror or his lack of knowledge of his illness: In re Estate of F. K. Fawcett, 449 Pa. 497, 297 A. 2d 799 (1972); Kummer Estate, 19 Bucks 147 (1969). This good health of Lawrence Snyder at the time of the transfer weighs heavily in rebutting the established presumption.

Counsel for appellant has also advanced the argument that the transfer was prompted, not by any fear of death but by a desire of an elderly man to rid himself of the responsibility of the management of a 190-acre farm. This is the testimony of Leon Snyder, decedent's son and heir, and it would seem to be corroborated by other circumstances, as has been mentioned. The elder Mr. Snyder was near 80 years old and was beyond the point where he could do any real amount of useful work on the farm. It would not seem to tax the mind too much, especially taking into account that there is no evidence to the contrary, to conclude that Lawrence Snyder desired to be free of such managerial chores. Such reasoning does find precedent in established case law: Heacock Estate, 43 D. & C. 2d 191 (1967).

Finally, one must consider moral obligations when deciding a case as this. Were there intangibles which may have prompted a transfer of a valuable asset? Again, no evidence has been presented

to rebut the most obvious of conditions. For more than 15 years, decedent had been living with Leon Snyder and his family on the farm which decedent owned. The relationship appears to have been quite close between the parties, with the elder Snyder being one of the family. From the tenor of the testimony it is apparent that decedent assumed that Leon would one day own the farm. This is supported by the fact that Leon toiled for such a minimal salary for many years. Again, one need not be too imaginative to see that the elder Snyder's assumption that the land should go to his son was in gratitude for his son's service and his making a home for decedent for the last 16 years. Family obligations and the happiness one gets from seeing a loved one benefit from his kindness is a proper motive for rebutting the presumption of a gift in contemplation of death: Baker's Estate, 39 D. & C. 405 (1940); Fawcett, supra.

A check list of what to look for in deciding whether a gift was in contemplation of death is found in Slaughenhaupt's Estate, 1 Adams 181, 185 (1960), to quote:

"The factors to be considered in deciding upon the question of 'contemplation of death' have been referred to as: (1) Ascertainment whether transferor's primary motive in making the gift is the thought of death and a desire to anticipate the event; (2) what other motive decedent had in making the transfer; (3) the condition of body and mind of transferor; (4) his age; (5) his desire to be relieved of responsibility; (6) his desire to discharge any moral obligations; (7) his purpose to carry out some previously adopted policy with reference to the objects of his bounty; (8) the length of time elapsing

between the gift and the death; (9) whether the gift was all of or a substantial portion of transferor's property."

We can accept this as a list of factors to be considered although equal weight cannot be given to each factor and the particular case may have additional factors which are equally or even more important.

If our present fact situation is disassembled and looked at in these terms, most apparently no transfer in contemplation of death is had. Taking points 1 and 2 together, it has been shown that decedent had several motives for divesting himself of the farm: old age and desire to rid himself of a mental burden; desire to do something good for his only child; desire to repay this child for the years he had worked for minimal remuneration. As to number 3 it is manifest that, at the time of the transfer, decedent's body and mind functioned exceptionally well for a man of his age. Turning to number 4, one sees a 79-year-old man making a transfer, but as just stated, a healthy 79-year-old man. Numbers 5 and 6 have been discussed and no real evidence as to number 7 has been presented. Number 8 is highly important in this case when one considers that decedent did not die of natural causes, and it would be hard to believe that one contemplated suicide for a 15-month period. Finally, question number 9 has been decided with divergent results and need not be discussed in order to come to a conclusion in our case.

It seems clear that the transfer by Lawrence Snyder to his son, Leon, would not be a transfer in contemplation of death and would not be subject to inheritance tax under section 222 of the Inheritance Tax Act of 1961 supra. However, this conclusion would not affect the possibility of taxability of

the transfer under section 225 of that act: 72 P.S. §2485-225. This section provides that any transfer made without adequate or valuable consideration in money or money's worth at the time of the transfer is subject to inheritance tax, if, under the terms of the transfer the transferee promises to make payments to the transferor or promises to take care of the transferor during the remainder of the transferor's life.

Immediately, one must note that no presumption of taxability is present in this statute. The fact that the transfer was made within two years of death is of no consequence. No presumption of an agreement which would give rise to a taxable transfer is presumed and the burden of proof and going forward remains on the Commonwealth.

The sole evidence deduced to support the taxability of the transfer on this basis is had from the statement of the younger Mr. Snyder who states: "Well, the agreement was that he (Lawrence Snyder) would deed the farm to me and we would continue to make a home for him and he would live there." Mr. Snyder further says that such home would be without cost. Although it would sound as if a formal agreement had been struck, these statements seem to be taken out of context. Looking at later testimony, the younger Mr. Snyder says that no plan had ever entered any one's mind other than the idea of his father living with them for the rest of his life. It is to be noted that these people had lived together harmoniously for more than 15 years, and that the testimony refers to making a home with the younger Snyder family and not with an abstract plan of caring for Father Snyder or his being cared for by some outside party. The general feeling gleaned from the testimony as a whole is that

things were to go on as before except that decedent would not be bothered with the business of running a farm. It is also obvious from the closeness of the family that Lawrence Snyder was guided by a moral obligation to repay his son for his particular toils and his son's family for making a home for him these last years. That this is the case is bolstered by the fact that decedent was not totally dependent on his son for income. Rather, Lawrence Snyder had other investment income and continued to pay his own medical and car expenses.

Remembering that in this phase of the issue no presumption exists in the Commonwealth's favor, one cannot say that the transfer with which we are concerned was clearly shown by the preponderance of the evidence to be made in exchange for a promise by Leon Snyder to care for his father in old age.

Therefore, it must be held that the transfer of realty by deed from Lawrence Snyder to his son Leon was not taxable under the Inheritance Tax Act of 1961 and any and all money so far paid should be returned and the assessment adjusted to come into line with this decision.

## ORDER

And now, January 5, 1976, the appeal of Leon R. Snyder, executor of the estate of Lawrence H. Snyder, deceased, from the assessment of a transfer inheritance tax on real estate of said estate valued at $26,000, is sustained, said assessment is set aside and vacated, and said real estate is determined and declared not a taxable asset of said estate.