## Roger Estate

*Mary Lou Hogan,* for estate.

*Lawrence Barth,* for Commonwealth.

ADJUDICATION BY MIMS, J., SEPTEMBER 11, 1981:

\* \* \*

The decedent died on October 15, 1979, having been born on December 21, 1901.

Section 222 of the Inheritance and Estate Tax Act of 1961 provides:

> *Contemplation of Death* — A transfer conforming to Section 221 (a), and made in contemplation of the death of the transferor, is subject to tax under this Act. A transfer shall not be deemed or held to have been made in contemplation of death if made more than two (2) years prior to the death of the transferor, but, unless shown to the contrary, shall be deemed to have been in contemplation of death if it is of a material part of the transferor's estate and is made within two (2) years prior to the death of the transferor.
>
> A transfer is made in contemplation of death when the dominant or impelling motive, but not necessarily the sole motive of the transferor, was prompted by the thought of death, without which motive the transfer would not have been made. The term is not restricted to that expectancy of imminent death which actuates the mind of a person making a gift causa mortis.

We must consider the evidence presented to determine whether the executors have met the heavy burden of rebutting the presumption that the transfers made on November 14, 1978, April, 1979, and May 16, 1979, were made in contemplation of death and thus are subject to transfer inheritance tax.

The evidence shows that the decedent transferred the title to the residence real estate and the accounts held in Central Penn National Bank into the joint names of himself and his wife. These transfers were made during 1977 after his marriage and prior to his hospitalization in January, 1978. Other accounts were not transferred presumably because decedent had not procured death certificates to furnish to the respective banks so that he could delete his first wife's name from the accounts and substitute his second wife's name on the accounts.

In January, 1978, decedent was informed that he had a possible tumor on his lung. He refused to discuss this or to have any treatment for this problem. It should be noted that his first wife had died of cancer in 1976 and his brother had died of lung cancer not long before. In January, 1978, decedent executed his will, and certainly at that time his thoughts were directed toward death. It was also after this discovery that he transferred the accounts at Trevose Federal Savings and Loan Association and Commonwealth Federal Savings

and Loan Association into joint names and purchased a certificate of deposit which he placed in joint names from Trevose Savings and Loan Association. Esther Roger has testified that decedent wanted to take the same care of her as he had of his first wife. However, he had executed his will in January, 1978, in which he bequeathed to her his residuary estate as well as shares of the stock of the beverage company and the real estate at 908 Pine Road. He did not have to transfer his accounts into joint names in order to provide for her.

There has been considerable testimony that the decedent was very reticent and never expressed concern over his health. However, he did express his opinions that his wife and brother would not have died had it not been for surgery. The medical evidence established that he was informed of his physical problems of the lung tumor and the brain tumor and while there was no mention of an imminent demise on the part of the physicians or the decedent, he was aware of the significance of his physical condition and in actuality he died as a consequence of the lung tumor.

This case can be distinguished from *Fawcett Est.*, 449 Pa. 497, where the decedent, an eighty-seven year old man and a millionaire made cash gifts to a woman in whom he was romantically interested within two years of his death. He was in excellent health and active in business and community affairs prior to his murder in his home.

It can also be distinguished from the facts in *Bildhauser Est.*, 25 FIDUC. REP. 191 where the decedent, a man of advanced years, inherited considerable funds from his brother's estate and gave gifts out of a spirit of generosity towards his friends and relatives. In *Bildhauser* the decedent was active and died suddenly of a heart attack, having completely recovered from an attack of pneumonia for which he had been hospitalized six months earlier.

The executors argue that the joint accounts were the type on which either owner could draw without the joinder of the other and therefore prove that the decedent's transfer of the accounts were motivated by his intention to give his wife trust and respect and not motivated by a desire to avoid death taxes. Had the decedent been in good health and had he not learned

of his possible lung tumor in early 1978, this would be more persuasive. However, we must also consider the fact that he executed his will in early 1978, while hospitalized, having been urged to do so by his sales manager who was concerned over the effect on the business of the death of the decedent. His codicils executed in August, 1979, and October, 1979, were certainly executed by desires for disposition of his corporate assets in the event of his death and were not life oriented.

We are satisfied that the evidence has not met the burden of persuasiveness necessary to rebut the presumption that the transfers made on November 14, 1978, April, 1979, and May, 1979, were made in contemplation of death. The appeal from the tax assessed on:

> Account No. 105592-5—Trevose Savings and Loan Association
>
> Certificate of Deposit No. 704921-8—Trevose Savings and Loan Association
>
> Account No. 97-950273—Industrial Valley Bank
>
> Account No. 11-20001169—Commonwealth Federal Savings Bank

is hereby denied.

We find credible the evidence presented by the executors that the purchase of the Certificate of Deposit No. 015041 at Central Penn National Bank was made from funds on deposit in Savings Account No. 918-00038-3, an account which was transferred to decedent and Esther Roger on April 12, 1977. Since the certificate was purchased with funds derived from a transfer of funds previously owned by the decedent and his wife for a period in excess of two years prior to the date of death, there was no creation of a new ownership which would be subject to tax and this asset is not taxable. See *Inheritance Tax Protest Decision 78-2*, 28 FIDUC. REP. 351.

The appeal from the tax assessed on Certificate of Deposit No. 015041 at Central Penn National Bank is sustained.

The awards hereinafter directed are made subject to such liability as is still in fact due thereon for transfer inheritance tax. ***