334 A.2d 263
**Elsie Keiser CLAY**
**v.**
**Edward KEISER, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1974.

Decided March 18, 1975.

Donald D. Dolbin, Cyrus Palmer Dolbin, Pottsville, for appellant.

Joseph A. Zane, Schuylkill Haven, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an equitable action to impress certain shares of stock in the possession of appellant with a constructive trust and compel assignment of those shares to appellee. The chancellor granted the requested relief and his decree was confirmed by the court en banc. This appeal ensued.[1]

Appellant challenges the chancellor's conclusions that a tenancy by the entireties was created when the stock was placed in the names of both spouses and that the subsequent retransfer to appellant created a resulting trust for the benefit of appellee. Such matters turn primarily on their particular facts, but appellant has waived any right to challenge the chancellor's findings of fact by his failure to print in the record on appeal any of the testimony relied upon. Supreme Court Rule 41(7).[2] We conclude that the chancellor's conclusions of law were properly drawn from the facts found and affirm upon the following extracts from his able opinion, as supplemented by our footnote.

"Findings of Fact

. . . . . . . .

"3. That the plaintiff [appellee] is the former wife of the defendant [appellant], having been divorced from him on December 31, 1971.

"4. That defendant inherited 863 shares of capital stock of Pardee Land Company (hereinafter referred to

1. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(4), 17 P.S. § 211.202(4) (Supp.1974).

2. This waiver is clearly intentional, as appellant responded to a motion to quash the appeal for failure to comply with our Rule 44 by averring that the evidence had no connection to the questions involved, inasmuch as the instant appeal involves only the chancellor's alleged error in making certain conclusions of law.

as 'Pardee'), of Philadelphia, Pennsylvania, from his mother, Frances K. Keiser, who died on November 11, 1968.

"5. That defendant thereupon caused the said shares of stock which he inherited to be issued and transferred in the names of Edward K. Keiser and Elsie R. Keiser, as tenants by the entireties, as evidenced by Certificate No. 544, representing 863 shares of stock of Pardee, dated October 22, 1969.

"6. That at the time of and prior to the transfer of said stock to plaintiff and defendant as tenants by the entireties, defendant had been the victim of a heart attack and was, for a number of years, ill and required doctors' care and hospitalization.

"7. That the transfer of said stock by defendant to plaintiff and defendant as tenants by the entireties was the wish and voluntary act of defendant, motivated by his desire to minimize future inheritance taxes for the benefit of his wife and family.

"8. That on August 7, 1970, defendant made application to Minersville Safe Deposit Bank and Trust Company for a joint loan to him and plaintiff.

"9. That the application for said loan was made by defendant in the offices of the aforesaid bank at which time he executed a demand note and agreed to furnish additional security in the form of two certificates of stock of Pardee: (1) Certificate No. 502, representing 24 shares of stock of Pardee, issued in the name of defendant individually, which certificate is not in issue, and (2) Certificate No. 544, representing 863 shares of Pardee, issued in the names of Edward K. Keiser and Elsie R. Keiser, as tenants by the entireties.

"10. That after the loan application was made, defendant left the bank and went to his home whereat he requested plaintiff to sign the 'papers' for the proposed

loan. That defendant placed before plaintiff several sheets of paper for her signature at which time plaintiff inquired whether the Pardee stock was to be used as security for the loan. Defendant stated that it would not be used as collateral, whereupon plaintiff affixed her signature to two papers presented to her by defendant for execution.

"11. That plaintiff, relying on the representations of defendant, did not examine the papers to which she affixed her signature.

"12. That defendant returned later in the day to the bank with the demand note signed by plaintiff and defendant and stock certificate No. 544 of Pardee which contained on the assignment portion the signatures of plaintiff and defendant which were notarized by Nancy J. Heffner, Notary Public, said assignment being dated June 11, 1970, and designated Edward K. Keiser individually as the transferee for 863 shares of Pardee.

"13. That plaintiff did not affix her signature to the certificate of Pardee stock on June 11, 1970, but that such signature was affixed on August 7, 1970, when she signed the demand note and another paper which was the stock certificate.

"14. That on July 22, 1971, defendant directed the Minersville Safe Deposit Bank and Trust Company to forward Certificate No. 544 to Pardee to effect a transfer of the 863 shares represented by said certificate to him. In compliance with this direction, Pardee did issue a new certificate, being No. 548, representing 863 shares of Pardee in the name of defendant and delivered it to Minersville Safe Deposit Bank and Trust Company.

"15. That plaintiff had no knowledge of the registration of the transfer of the Pardee stock to defendant until she was so informed by her son in September of 1971, after which she called Pardee and received confirmation of said transfer.

"16. That plaintiff did not knowingly, willingly or voluntarily sign the original certificate, No. 544, to transfer the stock to defendant's name alone.

"17. That plaintiff did not receive any consideration for affixing her signature to the original certificate, No. 544.

"18. That from the date the 863 shares were transferred to plaintiff and defendant as tenants by the entireties, to the date the same were re-transferred to defendant alone, all dividend payment checks were in the names of defendant and plaintiff and deposited in their joint bank account.

"19. That both parties had access to the funds so deposited and withdrawals were for the benefit of either party or their joint benefit.

"20. That in accordance with amended Order of Court dated December 21, 1971, sixty per cent of all dividends were escrowed and forty per cent were paid to defendant.

.    .    .    .    .    .    .    .

"Discussion

"We first must determine ownership of the 863 shares of Pardee stock. There is no dispute that defendant initially acquired the stock as an heir of his mother who died November 11, 1968.

"Upon acquisition decreed by the Orphans' Court of this county, the defendant, before he obtained physical possession of the stock, directed that Pardee issue a certificate for the aforesaid 863 shares in the names of himself and plaintiff as tenants by the entireties. Defendant testified that at that time he was in a precarious position healthwise, having suffered a heart attack. He further stated that his appointment as executor made him aware of the tax liabilities that could arise. Defendant also stated that he voluntarily placed the stock in joint names because it would 'make her feel better'.

"These shares were held by husband and wife. The law is well settled in this Commonwealth, as enunciated [in] Holmes' Estate, 414 Pa. 403, 406, 200 A.2d 745, 747 (1964), when the court said:

'However, where stock is purchased by a husband and the certificates are made out in the names of both the husband and wife, even though the certificates are delivered to the husband and retained by him, the gift to the wife is complete. The gift is presumed by reason of the nature of the joint tenancy which is peculiar to the husband and wife relationship and delivery to the husband is considered to be delivery to both the husband and the wife. . . .'

"When the inheritance finalized, the stock was exclusively the property of the defendant. He could dispose of the shares as he pleased. The mechanics to divest himself of sole ownership required only that he place the stock in both names. Nothing more was required to create an estate by the entireties.

"The delivery and retention, after the creation of an estate by the entireties, of the stock to the husband, as was done in our case, was of no moment. In order to overcome the presumption that an estate by the entireties exists and that a complete gift ensued therefrom, there must be clear and convincing evidence to the contrary. See *Holmes' Estate,* supra.

"The motivation for the transfer, as stated by defendant, that he wanted to save inheritance taxes or that he wanted his wife to feel better, or that he was doing it for the betterment of the family, is of no consequence.[3] Cer-

**3.** This uncontested purpose in making the transfer distinguishes this case from those relied upon by appellant (with one exception to be noted below). In all of those cases, the purpose of placing title in the wife's name rebutted the normal presumption of donative intent. *Chambers v. Chambers,* 406 Pa. 50, 176 A.2d 673 (1962) (avoidance of claims of creditors); *Lapayowker v. Lincoln College Prep. Sch.,* 386 Pa. 167, 125 A.2d 451 (1956) (same); *Christy v. Christy,* 353 Pa. 476, 46 A.2d 169 (1946) (property placed in wife's name at request of mortgagee to avoid attacks

tainly the reasons do not overcome the presumption that an estate by the entireties exists. The reasons for the transfer are most commendable but under no circumstances can we conclude that the reasons were clear and convincing evidence that the presumption of a gift was overcome. In a well-written opinion by our sister court of Franklin County, in *Flood v. Flood,* 43 Pa.D. & C.2d 283 (1967), Judge Eppinger stated, at page 285:

'Once an estate by the entireties is created during the marriage relationship neither party can terminate the estate, nor by his own act affect the other's right to survivorship. In order to overcome the presumption that an estate by the entireties exists, and that a complete gift ensued therefrom, there must be clear and convincing evidence to the contrary . . .'

Our position is fortified further by *Shapiro v. Shapiro,* 424 Pa. 120, 129, 224 A.2d 164, 169 (1966), where the court said:

'On the other hand, where a husband purchases real estate or personal property with his own funds and places it in his wife's name or transfers such property to his wife without consideration, *there is a factual presumption that a gift was intended and, in order to rebut that presumption and establish a resulting trust in his favor,* the husband must support his claim by *clear, explicit and unequivocal*—though not necessarily uncontradicted—evidence: *Lapayowker v. Lincoln Col-*

by husband's former creditors which might be based on false belief that property was purchased with funds concealed in just completed bankruptcy proceeding); *Mahjoubian v. Mahjoubian,* 321 Pa. 354, 184 A. 455 (1936) (real estate broker placed property in wife's name without her knowledge for "business convenience"). Here, on the other hand, plaintiff's purpose was to transfer the stock to his wife at the least cost in inheritance taxes. This surely is not inconsistent with a donative intent, but rather positively suggests such an intent.

*Katz v. Katz,* 309 Pa. 115, 163 A. 214 (1932), also relied upon by appellant, is entirely inapposite on this issue, because it was held that the wife, by restricting her pleadings to the contention that the property was purchased with her own funds, had excluded the issue of possible donative intent from the case.

*lege Preparatory School,* 386 Pa. 167, 171–172, 125 A. 2d 451 (1956).' (Emphasis added.)

See also *Berhalter v. Berhalter,* 315 Pa. 225, 173 A. 172 (1934); *Nachman v. Nachman,* 417 Pa. 389, 208 A.2d 247 (1965).

"The defendant further relies on his unsupported testimony that he did not intend his wife to have any beneficial interest in the stock. It is uncontradicted that the dividend checks flowing from the Pardee stock were in both names. They were deposited in a joint account which was subject to draw by either party. These are evidential facts which buttress the plaintiff's contention that a gift and a tenancy by the entireties was created and confirms that plaintiff had a beneficial interest. He also appears to rely on his claim that the stock was never delivered to the plaintiff and that she did not have access to the certificate. These averments we dismiss as did the court in *Holmes',* supra.

"We conclude that the defendant did not overcome the presumption that a tenancy by the entireties was created by clear, convincing and sufficient evidence.

"Having found that the Pardee stock was held by the entireties, the next issue for determination is the ultimate ownership and status of the stock when it was subsequently re-transferred to defendant alone.

"The problem now posed is whether the re-transfer to defendant alone took away those rights which plaintiff acquired. In *Shapiro v. Shapiro,* supra, the court cites the holding in Darlington's Appeal, 86 Pa. 512, which is:

'The law looks with such extreme jealousy upon all transactions in which a husband deals with the estate of his wife that it will, upon very slight evidence, cast upon him the burden of showing that he has derived no advantage from such transactions; *and whenever it appears that by any circuity, he has obtained the legal* title to any part of her estate without her free consent,

*affirmatively shown, it will declare him a trustee.'* (Emphasis added.)

[*Shapiro,* supra, at 128, 224 A.2d at 168.]

. . . . . . . .

"To attribute the execution of plaintiff's signature to the transfer and assignment of the Pardee stock as an acquiescence on her part to a termination of her rights as a tenant by the entireties is wholly unrealistic and unsound. Under the factual setting presented by the testimony, plaintiff never consented to a dissolution of her rights as a tenant by the entireties to the Pardee stock. The conduct of the defendant in obtaining her signature to the assignment was improper and fraudulent in nature. See *Nachman v. Nachman,* 417 Pa. 389, 208 A.2d 247 (1965); *Stemniski v. Stemniski,* 403 Pa. 38, 169 A.2d 51 (1961); *Reifschneider v. Reifschneider,* 413 Pa. 342, 196 A.2d 324 (1964)."

Decree affirmed. Each party pay own costs.

EAGEN and NIX, JJ., concur in the result.

JONES, C. J., and POMEROY, J., did not participate in the consideration or decision of this case.