543 A.2d 534

**Gregory L. SUTLIFF, Appellant,**

v.

**Carlene SUTLIFF, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 20, 1988.

Decided June 1, 1988.

380

Bonnie D. Menaker, for appellant.

Ronald M. Katzman, for appellee.

Before NIX, C.J., and LÁRSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court which affirmed in part, and remanded for further proceedings, with respect to an order of the Court of Common Pleas of Cumberland County determining equitable distribution of certain property following a divorce. 361 Pa.Super. 504, 522 A.2d 1144. The action for equitable distribution arose from the divorce of appellant, Gregory L. Sutliff, and appellee, Carlene Sutliff, after their marriage of nearly 25 years. Appellant filed a complaint in divorce in 1982, and, after numerous hearings were held before a master, a report was filed in 1984. Subsequently, in December, 1984, the parties filed a stipulation providing for, inter alia, a bifurcated divorce. A final divorce decree was then immediately entered. On May 7, 1985, the Court of Common Pleas filed an order providing for equitable distribution. An appeal and cross appeal were taken to the Superior Court, whereupon certain elements of tbe equitable distribution scheme were affirmed and others were remanded for further determinations and/or modifications to be made. The instant appeal ensued.

■ The first issue to be addressed is whether the Superior Court erred in its selection of a valuation date for the marital assets. The Court of Common Pleas utilized October 21, 1981, the date when the parties separated, as the valuation date. The Superior Court concluded, however, that valuation of marital assets should reflect values as of the distribution date, rather than the separation date, and, accordingly, the case was remanded for revaluation of

certain business interests, including automobile dealerships, that were subject to distribution. The basis for the Superior Court's action was that, because there had been a considerable passage of time between separation of the parties and distribution of their marital assets, substantial fluctuations in the values of those assets may have occurred, which, from an equitable standpoint, should be reflected in the distribution order. We agree.

The Divorce Code contains no express provision governing the selection of a date to be used for valuation of marital property, where equitable distribution is concerned. While the Code clearly states that property acquired after separation is not to be considered marital property, 23 P.S. § 401(e), the question presented here is not whether particular assets are to be deemed marital, as opposed to individually owned, but rather whether assets given to be marital in nature are to be valued at one level or another. It is implicit, however, in the statutory provisions governing equitable distribution that a valuation date reasonably proximate to the date of distribution must, in the usual case, be utilized. Specifically, 23 P.S. § 401(d) provides:

In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

Examination of this statutory provision reveals numerous grounds for an inference that marital property must be distributed with reference to its value at the date of distribution. Indeed, it is inconceivable that the requirement that the distribution be made in such proportions as the court deems "just" could be satisfied without reference to the current values of the assets. The statute, in its enumeration of factors to be considered in making a distribution of marital property, sets forth a number of factors which focus on the *present* needs and financial situations of the parties, including their "amount and sources of income," "employability," "estate, liabilities and needs," chances for "future acquisitions of capital assets and income," "sources of income," the "value of the property set apart" as non-marital property, "standard of living," and the "economic circumstances of each party at the time the division of property is to become effective." In view of these factors, and with particular reference to the last one which encompasses generally all of the former, and which expressly focuses on the parties' financial circumstances *at the time* when marital property is to be distributed, it is inconceivable that the legislature intended marital property to be valued at some *other* time. Granted, there may be situations where marital assets have been consumed or disposed of by one of the parties, thus rendering a current valuation impossible and making it necessary to rely on data that

would otherwise be considered stale, but such is not the case here. See generally *Sergi v. Sergi,* 351 Pa.Super. 588, 594, 506 A.2d 928, 931–932 (1986) (discussion of valuation where marital property is no longer in existence). In the usual case, however, given that the parties' present needs and circumstances are to be a major factor in distributing marital assets, it would be impossible to construct a distribution scheme that would be fully responsive to those needs and circumstances if the court were to act without taking cognizance of the current values of the assets being distributed.

As stated in *Bacchetta v. Bacchetta,* 498 Pa. 227, 232, 445 A.2d 1194, 1197 (1982), "By providing for the distribution of property acquired during the marriage, the Divorce Code permits the correction of ... economic injustices...." See also 23 P.S. § 102(a)(6) (legislative intent of the Divorce Code is to "[e]ffectuate economic justice between parties who are divorced ... and insure a fair and just determination and settlement of their property rights.") Yet, one can readily imagine the economic injustices that would be inflicted by distributing property without regard to its value. It cannot be said that distributions based upon stale valuations are based on value, for value is by no means a constant.

If, as has been suggested, marital property values were to be fixed as of the date of the parties' separation, or as of the date of filing a complaint in divorce, severe injustices would at times be inflicted upon the parties concerned. Volatile market conditions and changing economic circumstances can render assets that had been valuable months or years earlier virtually worthless in the present, and vice versa. Publicly traded securities may be worth a fortune one day, and a pittance the next. Privately owned business interests may be valued as a gold mine, or as a scrimption, depending on the times. Automobiles that were once of considerable worth may, through abuse or neglect, rapidly become valueless. Other examples too numerous to mention scarcely require enumeration. In view of these com-

monly recognized aspects of valuation, it is difficult to conceive justification for the view that stale valuation data, i.e., data that does not reflect values reasonably proximate to the date of distribution, should be used by the court in setting a distribution scheme. See *Sergi v. Sergi*, 351 Pa.Super. at 594, 506 A.2d at 932 ("[E]quitable results will most likely flow from providing the court with the most recent information available. . . . ").

The present case presents a prime example of circumstances where reliance upon stale valuation data could lead to an unjust distribution of property. The parties separated in October of 1981, a complaint in divorce was filed in February of 1982, and distribution of marital assets was ordered by the Court of Common Pleas in May of 1985. Clearly, the time lapse between the former dates and the latter date, when distribution was ordered, is such that highly significant value fluctuations may have occurred. To distribute property without regard to those fluctuations would be illogical, and would undermine the legislative intent of making the equitable distribution process responsive to the contemporaneous needs and financial situations of the parties. We conclude, therefore, that the Superior Court properly remanded this case for determination of revised asset valuations, thereby negating the Court of Common Pleas' reliance upon values fixed as of the date of separation.

■ The next issue presented concerns the classification of property as marital, or non-marital, under provisions set forth in 23 P.S. § 401. A statutory presumption is established in favor of classifying property as marital when it was acquired during marriage:

> All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is over-

come by a showing that the property was acquired by a method listed in subsection (e).

23 P.S. § 401(f). Thus, property is deemed marital unless it was acquired by one of the methods enumerated in 23 P.S. § 401(e), as, for example, property acquired in exchange for property held prior to the marriage, property excluded by agreement of the parties, property acquired by gift, property acquired after separation, etc. The specific issue raised in this appeal, however, is whether rebuttal of the presumption as to marital property requires a showing by clear and convincing evidence, or whether it is sufficient to rebut the presumption by a preponderance of the evidence. In the proceedings below, before the master and the Court of Common Pleas, a requirement of clear and convincing evidence was imposed. The Superior Court affirmed as to that requirement. We reverse.

In affirming the standard of clear and convincing evidence, the Superior Court reasoned that because that standard is applied in *certain* other civil cases, it should be applied in this context as well. For example, the Superior Court noted that the standard is applicable where fraud is to be proved, e.g., *Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792, 794 (1987), where one attempts to rebut the presumption that property purchased by a husband or wife and expressly titled in the names of both the husband and wife constitutes a completed gift and an estate by the entireties, see *Holmes Estate,* 414 Pa. 403, 200 A.2d 745 (1964), and where parental rights in children are to be severed, e.g., *In re T.R.,* 502 Pa. 165, 167, 465 A.2d 642, 642–643 (1983). See also 32A C.J.S. Evidence § 1023 (clear and convincing evidence required in a limited number of civil cases). In short, the Superior Court focused only upon those civil cases where the more demanding standard of proof has been applied, rather than upon the predominant number of civil cases where the evidentiary burden requires only proof by a preponderance of the evidence. It is not apparent what connection is to be perceived in comparing the present case to those cited, for the issues presented and considerations

involved are clearly distinct. Indeed, the present case is one where the presumption in question was created by an express statutory provision in the Divorce Code, and where the "showing" necessary to rebut the presumption has likewise been referenced by statute. 23 P.S. § 401(f).

The basis for imposing the standard of clear and convincing proof was indicated in the decision below to be that the wisdom of experience has demonstrated a need for greater certainty when dealing with this subject matter, due to the fact that certain social consequences and harsh or far-reaching effects on individuals may ensue from a determination that any given property is not marital in nature. Yet, in any case where economic interests of the parties are to be adjudicated, as is the case where rights to marital property are to be determined, it is obvious that the parties involved will incur the effects of the adjudication. It is not clear, however, that the effects are any greater in this realm than when other economic and property interests are at stake, and, thus, it does not appear that a higher standard of proof is, of necessity, required.

Indeed, if the legislature had intended a higher standard of proof to be applied in rebuttal of the statutory presumption regarding marital property, the statutory language would surely have so indicated. Instead, the legislature created a rule of substantive law that property acquired during marriage is to be deemed marital in nature, absent a "showing" that the property was acquired by one of the methods enumerated in subsection (e). 23 P.S. § 401(f). Certainly, the mere fact that a statutory presumption has been enacted, with provision for the presumption to be rebutted upon a proper showing, is not basis in itself for inferring that clear and convincing evidence is needed to rebut the presumption. See, e.g., *Fawcett Estate*, 449 Pa. 497, 297 A.2d 799 (1972). We perceive no basis, in logic, public policy, or otherwise, to infer that the "showing" required under the instant statute was intended by the legislature to be an enhanced one, requiring more than the usual preponderance of evidence to establish the

necessary proof. Thus, inasmuch as an improper evidentiary standard was applied by the courts below, a remand is necessary to permit reconsideration of the case in light of the appropriate standard.[1]

1. The remaining issues raised by appellant may be addressed in summary fashion. Appellant challenges the master's determination that one-half of the marital residence was the separate property of appellant's wife, and, hence, that such one-half interest was not subject to equitable distribution. The master's determination was based upon a finding of an interspousal gift in the form of a conveyance made in 1978 by appellant to his wife, in her sole name, of a one-half interest in the marital residence, which, until then, had been held as tenants by the entireties. See *Semasek v. Semasek,* 509 Pa. 282, 502 A.2d 109 (1985) (property can be rendered non-marital via an interspousal gift, see Divorce Code, 23 P.S. § 401(e)(3)). Appellant contends that the conveyance was made for reasons of tax planning to reduce federal estate taxes, upon the recommendation of a law firm that a gift be made for that purpose, and that, because appellant was not motivated by "love and affection" for his wife, the conveyance should not count as a gift for purposes of the Divorce Code. Donative intent is, of course, an essential element of a valid gift. *Id.,* 509 Pa. at 286, 502 A.2d at 111. But once it is determined that donative intent was present, inquiry into the reason or motive for a gift becomes meaningless. A transfer motivated by an attempt to avoid inheritance taxes is "not inconsistent with a donative intent, but rather positively suggests such an intent." *Clay v. Keiser,* 460 Pa. 620, 626–627 n. 3, 334 A.2d 263, 266 n. 3 (1975). It cannot be said that the master erred in finding an interspousal gift in this case, and even appellant does not deny that the conveyance should be regarded as an effective gift for federal tax purposes. In essence, appellant requests that two categories of gifts be recognized, i.e., those made for reasons of "love and affection," and those made for other reasons, so that, depending on the occasion presented, appellant could assert or deny a gift as best suits his interests. Such a position is clearly untenable. The Divorce Code does not contemplate that, after a gift has been made, an inquiry will be conducted into whether the reasons for the gift were sufficiently "loving" as to warrant recognition.

Appellant further alleges that the courts below erroneously interpreted a stipulation of the parties in a manner that precluded them from considering the alleged distinction between "loving" gifts and other types of gifts. Inasmuch as the alleged distinction is without basis, the question of whether the stipulation was properly interpreted is of no consequence.

Finally, appellant contends that the equitable distribution provisions of the Divorce Code cannot constitutionally be applied to property rights which vested prior to July 1, 1980, the effective date of the Code. Such a contention has already been considered and rejected by a majority of this Court, notwithstanding vigorous dissents. *Bacchetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982) (Mr. Justice, now Chief Justice, Nix, dissenting, and Mr. Justice Flaherty, dissenting,

Case remanded to the Court of Common Pleas for proceedings consistent with this opinion.

McDERMOTT, J., joins in the majority opinion and files a separate concurring opinion.

ZAPPALA, J., files a concurring and dissenting opinion in which LARSEN, J., joins.

STOUT, J., did not participate in the consideration or decision of this matter.

McDERMOTT, Justice, concurring.

I join in the opinion of Mr. Justice Flaherty. However, I write separately to emphasize that the distribution date is the date the common pleas court enters an order of distribution, and that the disposition date of post-trial motions or appeals does not affect the use of that original date as the valuation point. Therefore, a litigant cannot contest the relative value of assets on the grounds that they substantially changed while the case was being further litigated.

ZAPPALA, Justice, concurring and dissenting.

While I join the majority Opinion with respect to the burden of proof required to determine a marital asset, and the issue summarily disposed of in footnote no. 1, I must dissent from that part of the majority Opinion regarding the valuation date of the marital property.

Under Section 403(b) of the Divorce Code, both parties must submit a detailed inventory and appraisal of all property owned at the time the action is commenced. Likewise, under Pa.R.Civ.P. 1920.33, we require each party who seeks distribution of property to file a detailed inventory, listing the marital property valued as of the date of the complaint, within sixty days after service of a pleading containing a claim for distribution of property. Pa.R.Civ.P. 1920.33(a)(4).

joined by Mr. Justice Larsen). See also *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983) (due process exception to retroactive application of equitable distribution provisions where rights of a third party transferee are concerned).

Therefore, it is clear to me that the appropriate date for valuing marital property is the date the action was commenced. It would seem somewhat of an anomaly to require the parties to set values as of a certain date, yet ignore that valuation at the time of distribution. Nowhere else in the Divorce Code are the parties required to set forth the values of the property at a different time. Furthermore, using the date that the action was commenced as the time for valuation not only provides certainty, but is also consistent with the Divorce Code's attempt to expedite an otherwise emotional or explosive period.

I disagree with the majority's reasoning that using the date of filing the complaint will result in severe injustices. Either party can file a complaint at any time. Therefore, each party has the equal opportunity of setting the time for which the property will be valued. Once a complaint is filed, both parties can mutually agree to terminate the marriage and expedite property dissolution. Using the time requirements set forth in our Rules will result in an orderly procedure and timely distribution of property. The fluctuations in values that the majority is trying to avoid will not occur.

I admit that in a case such as the one now before this Court, using values as of the filing date of the complaint when the property is distributed more than three years later may result in stale values. This does not appear to me to be the fault of the Rule or the Court, but of the parties themselves. To prevent this occurrence, both parties could have agreed to a divorce under Section 201(c) of the Divorce Code and expedited property distribution in accordance with the Rules. However, from the number of appeals that have been filed by these parties (*see Sutliff v. Sutliff,* 361 Pa.Super. 194, 522 A.2d 80 (1987); *Sutliff v. Sutliff,* 515 Pa. 393, 528 A.2d 1318 (1987); *Sutliff v. Sutliff,* 326 Pa.Super. 496, 474 A.2d 599 (1984)), it is clear that a swift resolve was not their highest priority.

Accordingly, I am hardpressed to concoct a scheme to protect the parties. Bad facts make bad law. We should

not view the present litigation as the norm, but instead adopt a rule of law that ultimately results in equity to both sides. I would therefore remand this matter to the Court of Common Pleas of Cumberland County with instructions to evaluate the properties as of the date the action was commenced and expedite the distribution of the marital property.

LARSEN, J., joins in this concurring and dissenting opinion.