J-A29003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLES E. BARNES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NOELLE M. BARNES | : | No. 482 WDA 2021 |

Appeal from the Decree Entered March 15, 2021
In the Court of Common Pleas of Blair County Civil Division at No(s):
2017 GN 2030

| | | |
|---|---|---|
| CHARLES E. BARNES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NOELLE M. BARNES | : | |
| | : | |
| Appellant | : | No. 526 WDA 2021 |

Appeal from the Decree Entered March 15, 2021
In the Court of Common Pleas of Blair County Civil Division at No(s):
2017 GN 2030

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED: FEBRUARY 8, 2022**

Charles E. Barnes ("Husband") and Noelle M. Barnes ("Wife") cross appeal from the trial court's March 15, 2021 divorce decree.  The parties challenge various aspects of the trial court's equitable distribution of the marital estate.  After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

We glean the following facts and procedural background from the record. The parties married in June of 1998 and separated in July of 2017. This was the first marriage for both parties. During their union, the parties had two children, who are currently 20 and 14 years old. Husband is a civil engineer and is currently employed part-time by both Stiffler McGraw and Barnes Petroleum Products. Wife obtained her master's degree in physical therapy in 1993 and is currently working full-time as a physical therapist for HCR Manor Care. Husband commenced this litigation with the filing of a complaint in divorce on July 24, 2017. The parties resided together in the marital residence at 219 Beech Street, Hollidaysburg, Pennsylvania, until October 1, 2017. Wife then moved to 416 East Fir Street, Hollidaysburg, Pennsylvania, a residential property that the parties purchased and owned jointly during the marriage. Husband remains in the marital residence.

The court-appointed divorce master, Ilissa Zimmerman, Esquire ("the Master"), conducted evidentiary hearings on January 23, March 9, March 16, and October 21, 2020. The parties stipulated to a 50/50 division of the marital assets, as they each have similar incomes.[1] The Master filed her report and recommendations ("Master's Report") on November 30, 2020. Both parties filed exceptions. The trial court heard oral argument on the exceptions on

---

[1] The marital assets included multiple real estate properties, traditional and Roth IRAs, investment accounts, 401(k) benefits, deferred compensation benefits, pension plans, multiple vehicles, jewelry, and personal property, totaling approximately $1,000,000.00.

- 2 -

February 17, 2021. Additionally, on that same date, the court heard argument on Wife's motion for enforcement of the payment of monies owed by Husband to Wife pursuant to an agreement the parties had reached regarding Wife's interest in the R.E. Barnes Family Limited Partnership.[2]

On March 15, 2021, after consideration of the parties' exceptions, the trial court issued an opinion and final divorce decree, outlining the equitable distribution of the marital assets and finalizing the issue regarding Husband's payment to Wife for her interest in the Limited Partnership. ***See*** Trial Court Opinion and Decree in Divorce ("TCODD"), 3/15/21. The court decreed the following:

1. [Husband] and [Wife] are hereby divorced from the bonds of matrimony.

2. [Husband] shall retain all right, title, claim and interest in and to the real estate located at 219 Beech Street, Hollidaysburg, Pennsylvania. Wife … shall execute any and all documents necessary to release any right, title, claim or interest she may have in and to the real estate at 219 Beech Street, Hollidaysburg, Pennsylvania 16648.

3. Husband … shall remain solely responsible for payment to satisfaction of [*sic*] the mortgage [on the Beech Street

---

[2] Husband's parents are the majority shareholders of the R.E. Barnes Family Limited Partnership ("Limited Partnership"). During the marriage, Husband was gifted a 35% interest in the Limited Partnership, and Wife was gifted a 10% interest in the same. The parties stipulated that Husband's parents shall pay $7,000.00 to Wife, by December 31, 2020, for the purchase of her interest in the Limited Partnership. In return, Wife shall execute any and all documents necessary to release any right, title, claim or interest she may have in and to the Limited Partnership. Master's Report, 11/30/20, at 22-23. The parties further stipulated, for the purposes of equitable distribution, that the increase in value of the Limited Partnership during the marriage is in the amount of $17,000.00. ***Id.*** at 23.

property] with Quicken Loans. Husband shall remain solely responsible for any and all liens, loans, taxes, and encumbrances associated with the subject real estate.

4. Wife … shall retain all right, title, claim and interest in and to the real estate located at 416 E. Fir Street, Hollidaysburg, Pennsylvania. Husband … shall execute any and all documents necessary to release any right, title, claim or interest he may have in and to the real estate located at 416 E. Fir Street, Hollidaysburg, Pennsylvania. Wife shall remain solely responsible for any and all liens, loans, taxes and encumbrances associated with the subject real estate.

5. [Husband] shall retain all right, title, claim and interest in and to the real estate located at Knob Road, Portage, Pennsylvania. Husband shall remain solely responsible for any and all liens, loans, taxes, and encumbrances associated with the real estate. Wife … shall execute any and all documents necessary to release any right, title, claim, or interest she may have in and to the subject real estate.

6. Husband … shall retain as his sole and exclusive property the [p]rincipal IRA and the American Funds account in his name. Wife shall execute any and all documents necessary to release any right, title, claim or interest she may have in and to the subject retirement accounts and investment accounts.

7. Wife shall retain as her sole and exclusive property the American Funds [t]raditional IRA and Roth IRA in her name, the HCR 401[(k)] benefits, the VA deferred compensation benefits and the State Employee Retirement System (SERS) defined benefit pension plan. Husband shall execute any and all documents necessary to release any right, title, claim or interest he may have in and to the subject retirement and investment accounts.

8. Wife shall retain as her sole and exclusive property the proceeds from the sale of the 2015 Subaru. Husband shall retain as his sole and exclusive property the 2012 GMC Sierra pickup and the 2000 Arctic Cat snowmobile.

9. The KITE Realty Group account and LPL Financial accounts shall be divided equally between the [p]arties.

10. The American Funds accounts identified as the 529 accounts for the [p]arties' children are not subject to equitable

distribution. The 529 accounts will be maintained separately and solely for the benefit of the children.

11. The investment funds established by Wife with inheritance and identified as the Jackson National account, Nationwide VA account and American Funds account shall remain Wife's sole and separate property. Said funds are not subject to equitable distribution.

12. Husband shall retain as his sole and exclusive property the 2016 income tax refund in the amount of $327.85.

13. The Pennsylvania Bureau of unclaimed property shall remain the sole and exclusive property of Wife.

14. Husband shall retain the gold chain with seven stones. Wife shall retain the jewelry in her possession. Except as set forth above, each [p]arty shall retain the personal property in his or her own possession. Each [p]arty waives any right, title, claim or interest he or she may have in and to the personal property in the possession of the other.

15. Husband … shall pay a financial settlement to Wife … in the amount of $52,940.85. Said sum shall be reduced by $62.50[,] representing a credit for tax preparation. In addition, Husband shall … pay a financial settlement in the amount of $17,000.00 to Wife representing her interest in the … Limited Partnership. The aforesaid financial settlement payments shall be made by May 7, 2021.

16. Each [p]arty shall sign and execute any and all documents necessary to release the right, title, claim or interest to the property awarded to the other.

17. Each [p]arty shall cooperate and execute any and all documents necessary to give full force and effect to the provisions of this [o]rder. The documents will be signed and executed within ten (10) days of presentation.

18. This [o]rder is final and this [c]ourt retains jurisdiction of this matter only with respect to judicial enforcement of the terms and provisions contained herein.

*Id.* at 14-18.

On April 14, 2021, Husband filed a timely notice of appeal at docket no. 482 WDA 2021. Wife filed her cross-appeal on April 23, 2021, at docket no. 526 WDA 2021. Both parties timely filed their court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.

Husband presents the following questions for our review in his appeal:

I.      Did the trial court err and/or abuse its discretion in its determination of the value of Wife's Pennsylvania [SERS] benefits?

II.     Did the trial court err and/or abuse its discretion in failing to account for an American Funds non-qualified investment account owned by Wife in the court's determination of the equitable division of the parties' marital property?

III.    Did the trial court err and/or abuse its discretion in failing to account for the increase in the value of Wife's investments created from inherited funds?

IV.     Did the trial court err and/or abuse its discretion in determining the value of the vehicle distributed to Wife?

V.      Did the trial court err and/or abuse its discretion by failing to use the appropriate mortgage pay-off amount in calculating the equity in the marital residence under all the facts and circumstances of this case and the law applicable thereto?

VI.     Did the trial court err and/or abuse its discretion by requiring Husband to pay to Wife lump sum cash payments totaling approximately $70,000.00, when the evidence showed there were very few liquid marital assets with which to do so, but there were retirement accounts available for rollover to satisfy any amounts owed to Wife?

Husband's Brief I, 7/6/21, at 8-9 (unnecessary capitalization omitted).

Wife raises the following issues in her cross-appeal:

1. Whether the trial court erred and/or abused its discretion in excluding as a premarital asset[] the 2008 account value of

Husband's 401[(k)] earned through his employment with Lehman's Engineering, when Husband failed and/or refused to provide documentation as to the actual date of marriage value of the account[?]

2. Whether the trial court erred and/or abused its discretion in refusing to grant Wife credit in the amount of $5,882.00 for her 50% equitable interest in the $11,765.00 increase in Husband's 401[(k)?]

3. Whether the trial court erred and/or abused its discretion in overruling the Master and using the immediate offset method of distribution of Wife's SERS pension rather than a deferred distribution[?]

Wife's Brief I, 7/30/21, at 3 (unnecessary capitalization omitted).

Preliminarily, we note that, "[a]lthough the [M]aster's [R]eport is entitled to great weight, the final responsibility of making the distribution rests with the court." ***Trembach v. Trembach***, 615 A.2d 33, 36 (Pa. Super. 1992).

A trial court has broad discretion when fashioning an award of equitable distribution. ***Dalrymple v. Kilishek***, 920 A.2d 1275, 1280 (Pa. Super. 2007). Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." ***Smith v. Smith***, 904 A.2d 15, 19 (Pa. Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. ***Id.*** This Court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." ***Wang v. Feng***, 888 A.2d 882, 887 (Pa. Super. 2005). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. ***Id.*** "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." ***Schenk v. Schenk***, 880 A.2d 633, 639 (Pa. Super. 2005) (citation omitted).

*Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009).

Moreover, we recognize that:

"The Divorce Code[3] does not specify a particular method of valuing assets." *Smith*, 904 A.2d at 21. Thus, "[t]he trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties." *Id.* at 21-22. When "determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." *Schenk*, 880 A.2d at 642 (citation omitted). "Where the evidence offered by one party is uncontradicted, the court may adopt this value even [though] the resulting valuation would have been different if more accurate and complete evidence had been presented." *Id.* "A trial court does not abuse its discretion in adopting the only valuation submitted by the parties." *Id.*

*Childress v. Bogosian*, 12 A.3d 448, 456 (Pa. Super. 2011) (quoting *Biese*, 979 A.2d at 897).

To begin, we address Husband's first claim and Wife's third claim together, as both of these issues involve the calculation of the distribution of Wife's SERS benefits. It is undisputed that the marital estate includes Wife's SERS benefits, which she earned through her prior employment with the Veterans' Home from 2000 to 2007. As the trial court explained, "[t]he Master elected to use a deferred distribution of this marital asset to equally divide this future benefit between the parties. The Master gave no explanation for her rationale in selecting deferred distribution over immediate off-set." TCODD at 4. *See also* 23 Pa.C.S. § 3501(c) (defining the "deferred distribution" and the "immediate offset" methods of distribution regarding the

---

[3] *See* 23 Pa.C.S. §§ 3101-3333.

marital portion of a defined benefit retirement plan). "Case law instructs that an immediate offset is preferred where the marital estate has sufficient assets to offset the pension." TCODD at 3 (citing **Conner v. Conner**, 217 A.3d 301 (Pa. Super. 2019); **Miller v. Miller**, 577 A.2d 205 (Pa. Super. 1990)). In the case *sub judice*, the trial court found adequate resources to offset the SERS pension and, therefore, exercised its discretion to utilize the immediate offset method, rather than the deferred distribution method as suggested by the Master, in order to create finality for the parties. **Id.** at 3-4.

In support of its decision, the trial court opined:

Both [p]arties provided expert testimony as to the present value of the SERS pension. The two experts testified to differing present values for this future stream of retirement payments. Husband's expert, Ms. Tara Commerford, testified to a present value of $202,655.00. Wife's expert, Christopher Pattison, testified to a present value of $132,507.00. The assumptions for purposes of the determination of value of this pension are similar in every respect, but for the interest rate used. Both experts assume a retirement age of 60. Both acknowledge the pension will pay out in the amount of $1,012.00 monthly for 304 months based on an assumption Wife will live until 85 years of age. The difference in calculations between the experts is that Wife's expert uses an interest rate of 4% and Husband's expert uses an interest rate of 2.12% and 2.26%.

Wife's expert, Mr. Pattison, testified that he used 4%[] as the interest rate to calculate the present value of the benefit[,] as that is the rate contained on page 2 of the SERS handbook. This interest rate is set by statute. It is used by SERS for purposes of their pension plan. Under the State Employees' Retirement Code and accompanying regulations, the definition of "statutory interest" in Wife's SERS account is interest at 4% per annum, compounded annually. 371 Pa.C.S.[] § 5102. The comment to the definition of "statutory interest" is as follows: ["]*Statutory interest" has been substituted for the term "regular interest"*

*because it is more descriptive inasmuch as the rate of interest payable is statutorily defined.*

The plain meaning of statutory interest is that employees receive 4% interest, compounded annually, on their SERS investment. **See**[] **Conner**…, **supra** at 319. Therefore, the [c]ourt finds that Mr. Pattison is correct in his valuation of the SERS plan and will use his valuation for purposes of off-setting this marital asset. Hence, the [c]ourt is making a credibility determination between the two experts and are [*sic*] persuaded that [Wife's] expert's manner in determining the value of the SERS pension is in line with the intent of the law as it relates to this very specific and unique[ly-]defined benefit pension plan. Since this is Wife's plan, the value will be assigned to her in the distribution. This also gives Wife control over her plan with such things as determination of when to start collecting and beneficiaries to assign for purposes of the death benefit.

*Id.* at 4-6 (emphasis in original; citation to record omitted).

Wife claims that the trial court erred in "overruling the Master and using the immediate offset method of distribution of Wife's SERS pension rather than a deferred distribution." Wife's Brief I at 21. Wife argues that the deferred distribution method should have been used—especially given the large discrepancy in the present-day values—because it would allow the risk to be equally shared by the parties. *Id.* at 24. The deferred distribution method does not require a present-day value, so the court would not have had to choose one expert's valuation over the other. *Id.* at 27. She objects to the trial court's use of the immediate offset method, as she is concerned about the potential risk she bears in the event that her pension is either severely overvalued or undervalued. *Id.* at 24-25.

In response to Wife's claim, the trial court opined:

> The [c]ourt is frankly confused about Wife's position that she prefers this asset be distributed on a deferred basis. She argues that the "risk" of the pension should be shared between the parties. We see very little to no "risk" in this type of pension. In fact, such a pension has more certainty than IRAs or 401(k)s[,] which rise and fall depending on the workings of the stock market and will be depleted over time. According to [Wife], … she may die prior to getting all 304 payments. Such could be said for any sort of retirement plan or any asset. Will we live long enough to fully utilize them? Thus, such is not a reasonable basis to use a deferred distribution over an immediate offset when this [c]ourt finds that an equitable division of marital property may be created using an immediate offset. Additionally, the use of an immediate offset of the pension gives finality to the equitable distribution. The [c]ourt no longer has to retain jurisdiction for purposes of issues that may arise in the future concerning the pension.

TCODD at 6. Moreover, the court explained in its Rule 1925(a) opinion:

> By using an immediate offset, the amount of the cash payment the Master directed Husband pay to Wife was able to be significantly reduced. Reducing the amount of cash [Husband] had to pay seemed a more equitable distribution scheme in light of the fact there are few liquid assets comprising the marital estate.

Amended Trial Court Opinion ("Amended TCO"), 5/21/21, at 7. We conclude that the trial court properly exercised its discretion to choose the immediate offset method of distribution. *See Childress*, *supra*. Wife has failed to convince us otherwise.

Husband, on the other hand, agrees with the trial court's application of the offset method; however, he claims that the trial court erred in accepting Mr. Pattison's lower value of Wife's pension, as he argues the valuation was based on an incorrect interest rate. Husband's Brief I at 31. In support of his argument, Husband cites to the testimony of both parties' experts, at length. *See id.* at 24-30. He fails to include any legal analysis and/or citations to

- 11 -

legal authority. Instead, he solely endeavors to dispute the trial court's findings of fact, by pointing to contradictory and self-serving testimony. *Id.* Husband is essentially asking us to reweigh the evidence produced at trial and substitute our judgment for that of the fact-finder, which we cannot and will not do. *See Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa. Super. 2016). Thus, Husband is not entitled to any relief on this claim.

Next, Husband claims that the trial court erred by failing to account for Wife's American Funds non-qualified investment account valued at $34,284.03, as of the parties' separation date. Husband's Brief I at 32. He avers that the Master never mentioned this account in her Report and that the trial court misidentified this account as one that the parties had agreed would be treated as non-marital. *Id.* at 32-33. After careful review, we deem Husband's claim to be wholly without merit.

The record clearly establishes that Wife inherited $275,000.00 from her mother and that she made the following initial investments with her inheritance: (1) Jackson National (account #XXX1707) - $150,000.00; (2) Nationwide V.A. (account #XXX0109) - $100,000.00; and (3) American Funds (account #XXX6069) - $25,000.00. *See* Master's Report at 24 ¶2 (citing Wife's Exhibits 1-3). Moreover, Wife produced evidence establishing that the total value of her American Funds account #XXX6069 was $34,284.03, as of July 24, 2017, the parties' separation date. *See* Wife's Exhibit 4. The trial court properly decreed that the investment funds established by Wife, including the American Funds account, "shall remain Wife's sole and separate

property. Said funds are not subject to equitable distribution." TCODD at 16-17 ¶ 11. **See also** 23 Pa.C.S. § 3501(a)(3) (stating "marital property does not include … [p]roperty acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property").[4]

Husband further claims that the trial court erred in failing to account for the increase in the value, over the course of the marriage, of the investments Wife established with her inheritance. Husband's Brief I at 35. He states that the increase in value of those accounts from the date of the inheritance to the parties' separation date should have been included in the equitable distribution scheme. **Id.** at 35-36 (citing 23 Pa.C.S. § 3501(a) (defining the term "marital property" to include the increase in value of an inheritance received during the marriage); Master's Report at 24 ¶3 (indicating an increase in value of the inheritance of $21,271.70 as of the parties' separation date) (citing Wife's Exhibit 36)). Husband's claim is meritless.

_____

[4] The record further indicates that, in addition to her investment account #XXX6069, Wife also maintained with American Funds two college funds for the parties' children (accounts #XXX6030 and #XXX6524), a traditional IRA, and a Roth IRA. **See** Wife's Exhibit 1. We acknowledge that, in response to Husband's exceptions, the trial court mistakenly referred to account #XXX6069 as the college fund established for the parties' children and concluded, therefore, that the Master did not err in failing to include this account in its recommended distribution scheme. **See** TCODD at 6-7 ¶2. Nevertheless, based on our analysis *supra*, we deem the trial court's mistaken reference in its opinion to account #XXX6069 as the children's college fund to be harmless error, as the trial court properly declared the funds to be nonmarital and excluded the funds from equitable distribution on other grounds. **See id.** at 16-17 ¶11; 23 Pa.C.S. § 3501(a)(3).

Pursuant to section 3501(a.1) of the Divorce Code, the increase in value of Wife's inheritance "shall be measured from the date of marriage or later acquisition date to either the date of final separation *or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase*." 23 Pa.C.S. § 3501(a.1) (emphasis added). Here, the record indicates that Wife's $275,000.00 inheritance was valued at $296,271.70 as of July 24, 2017 (representing a $21,271.70 increase in value), and $213,388.04 as of September 20, 2019 (reflecting a $61,611.96 decrease in value). **See** Master's Report at 24 ¶3 (citing Wife's Exhibit 36). Thus, the trial court properly used the latter value and concluded "there was no increase in value to be distributed." Amended TCO at 3 ¶3. Additionally, the trial court explained:

> Wife's investment accounts, which were funded by proceeds of [her] inheritance, were used to purchase marital assets, pay marital debt and cover healthcare expenses related to the [p]arties' daughter. These expenditures, which benefited Husband, far exceeded any increase in value to the accounts. In fact, the accounts had less value as exhibited in [Wife's] Exhibit []36 as a result of Wife using a portion of these accounts during the marriage for marital assets/expenses.

TCODD at 7 ¶3. We discern no abuse of discretion, as the trial court's determination is supported by the record.

In his fourth claim, Husband asserts that the trial court erred in determining the value it assigned to the vehicle distributed to Wife. Husband's Brief I at 38. In response to his assertion, the trial court aptly explained:

> At the time of separation, each [p]arty took exclusive possession of the vehicle that they primarily drove. [] Wife's vehicle was the

2015 Subaru.  The 2012 GMC Sierra pick-up truck [was] taken by Husband.  That vehicle was paid off.  It was assigned a blue book value for purposes of equitable distribution of $15,073.00.  The corresponding value of Wife's Subaru in January 2019 was $23,930.00.  The Subaru had an associated car loan[,] and Wife made payments of $580 to $600.00 each month post-separation.

This Subaru had approximately 120,000 miles on it and[,] sometime early in January of 2020[,] the vehicle required significant repairs to remain operational.  Wife made the decision to trade the vehicle in for a 2018 Subaru and received a trade-in value on the car of $2,400[,] which the Master assigned to … Wife as the value of the vehicle.  Wife argue[d] that she should be given credit for paying off the vehicle loan which was a marital debt.  The debt associated with this vehicle at the time of the trade in was $13,622.53.  [Wife] request[ed] a credit for this amount.  In considering the value of the vehicle taken by each party, it seems unfair for Husband to have the vehicle valued at $15,000 and for Wife to end up with a vehicle having a value of $2,400.00 through what appears to have been unanticipated breakdown of the vehicle.

In order to achieve an equitable result on this issue, we will credit Wife for payment of the vehicle loan by deducting the trade-in allowance from the loan payoff amount.  Therefore, Wife will receive a credit in an amount of $11,222.53.  We recognize that this was a matter of discretion for the Master[,] but find the equities of the case lean toward recognizing Wife's payment of this marital debt.

TCODD at 7-8.

Husband argues that the trial court should have accepted the Master's recommendation to place a value on the vehicle of $2,400.00 instead of giving Wife a credit of $11,222.53.  Husband's Brief I at 41.  Husband is not entitled to any relief on this claim.  Although the Master's Report "is entitled to great weight, the final responsibility of making the distribution rests with the court." *Trembach*, 615 A.2d at 36.  *See also Childress*, 12 A.3d at 455-56 (citation omitted) (noting that the Master's Report is only advisory in nature and the

trial court has broad discretion when fashioning an award of equitable distribution). We discern no abuse of discretion or misapplication of law by the trial court, and we deem the trial court's determination to be supported by the record.

Next, Husband avers that the trial court erred and/or abused its discretion in concluding that the distribution date was the appropriate mortgage pay-off date, rather than the commencement date of the evidentiary hearings as utilized by the Master, for calculating the amount of equity in the marital residence to be distributed to him. Husband's Brief I at 41-43. We deem this claim to be meritless.

As explained by the trial court,

Following separation, … Husband retained the marital home … as his residence. Husband paid the mortgage post-separation. The Master assigned the value of this property to Husband. In her report, the Master noted the outstanding mortgage pay-off as of January 16, 2020[,] was $87,268.32. As of October 16, 2021, the outstanding mortgage balance was $79,164.74. In calculating the value of the home for purposes of equitable distribution, the Master used the [m]ortgage payout amount as of January 16, 2020[,] which was close in time to the first day of the evidentiary hearings. That amount was $87,268.32. [In her exceptions,] Wife claim[ed] the mortgage payout figure owed as of the date of distribution[,] which [the parties] argue is the last day of the evidentiary hearings…, October 21, 2020, should have been used. If the October payout is used, that would slightly increase the equity of the real estate to $296,835.26[,] and less realtor commission of 5% and transfer tax of 1%[,] we end up with a new equity value for purposes of equitable distribution of $274,275.26.

The issue then is which mortgage payoff date should the Master have used[?] The case law establishes that date of distribution is preferable to date of separation for purposes of valuation of marital assets. In this case, the argument is not between

- 16 -

separation date and distribution date, but rather the start of the evidentiary hearing process versus the end of the evidentiary hearing process, which is a time span of approximately 8 months. We find that it is implicit in the statutory provisions governing equitable distribution that a valuation date reasonably proximate to the date of distribution must, in the usual case, be utilized. **Sutliff v. Sutliff**, 543 A.2d 534, 536 (Pa. 1988). Is a period of 8 months significant in this distribution scheme? The Master apparently did not think so. She was certainly aware of the mortgage payoff amounts[,] as they are stated on page 14 of her [R]eport. The monetary difference equates to approximately $8,000.00. We find the balance due on the mortgage that is closer in time to the conclusion of the evidentiary hearing is the more appropriate value to use and[,] hence[,] we will alter the distribution scheme as it pertains to the assigned equity of the marital home.

TCODD at 9-10 ¶2.

It is well-established that a valuation date reasonably proximate to the date of distribution must, in the usual case, be utilized. **See Sutliff**, 543 A.2d at 536. As the **Sutliff** Court explained,

given that the parties' present needs and circumstances are to be a major factor in distributing marital assets, it would be impossible to construct a distribution scheme that would be fully responsive to those needs and circumstances if the court were to act without taking cognizance of the current values of the assets being distributed.

… "By providing for the distribution of property acquired during the marriage, the Divorce Code permits the correction of economic injustices." Yet, one can readily imagine the economic injustices that would be inflicted by distributing property without regard to its value. It cannot be said that distributions based upon stale valuations are based on value, for value is by no means a constant.

… [I]t is difficult to conceive justification for the view that stale valuation data, *i.e.*, data that does not reflect values reasonably proximate to the date of distribution, should be used by the court in setting a distribution scheme. **See Sergi**…, … 506 A.2d at 932

("[E]quitable results will most likely flow from providing the court
with the most recent information available….").

***Id.*** at 537 (ellipses and internal citation omitted). Accordingly, we conclude

the trial court properly utilized the October 21, 2020 valuation of the marital

residence for the purpose of equitable distribution.

In his final claim, Husband avers the trial court erred in requiring him to

pay Wife lump sum payments totaling approximately $70,000.00[,] when the

evidence shows there are very few liquid marital assets with which to do so.

Husband's Brief I at 44. Husband notes that the vast majority of the assets

in this case consist of either real estate or retirement accounts and argues

that it is not equitable to require him to pay Wife the lump sum when he does

not have access to $70,000.00 in cash. ***Id.*** He suggests, rather, that the trial

court should have permitted him to rollover retirement account funds to

satisfy any amount due and owing to Wife. ***Id.*** at 44-45.

In response to Husband's claim, the trial court opined:

The lump sum payment ordered pursuant to the equitable
distribution scheme fashioned by the [c]ourt is $52,940.85. This
is a significantly lesser cash payment than was in the original
scheme created by the Master. The additional $17,000.00
Husband has to pay to Wife is a matter decided by agreement
between the [p]arties to compensate Wife for her interest in the
… Limited Partnership. The Agreement was put on the record
during the Master's hearings[,] and this [c]ourt declined to disturb
said agreement. It was treated as separate and apart from the
equitable distribution scheme and Husband agreed, as well as[]
understood[,] this amount was to be a cash payment made to
Wife…. Additionally, the [c]ourt could have directed a roll-over of
a portion of Husband's retirement accounts to Wife, but chose not
to do so, as an exercise of discretion. These [p]arties clearly gave
much thought into saving for retirement and rightfully so. It was
our decision to award each [p]arty their retirement accounts and

- 18 -

not to disturb them. Wife's retirement savings greatly exceed Husband's as it is. If Husband objects to incurring debt to make this payment, he may elect to sell the Blue Knob property and[,] thus[,] satisfy the amount owed to Wife. While the Husband's marital assets may not be "liquid[,]" he does have sufficient assets to satisfy the payment requirement.

Amended TCO at 4-5 ¶¶6-7. We discern no abuse of discretion by the trial court and, thus, we conclude Husband is entitled to no relief on his claim regarding the lump sum payment to Wife.

Finally, we address the merits of Wife's two remaining claims together, as they both concern the distribution of Husband's 401(k), which he earned while he was employed with Lehman's Engineering. The parties stipulated that part of the 401(k) is premarital. **See** TCODD at 10 ¶3. Husband worked full-time at Lehman's from 1991 to 1996, and part-time from 1996 to 2000. He did not make any contributions to his 401(k) after 1996. **Id.** Therefore, the trial court correctly determined that the only portion of the account subject to equitable distribution is the increase in value of the account during the course of the marriage. **Id.** **See also** 23 Pa.C.S. §§ 3501(a), (a)(1) (excluding property acquired prior to marriage from "marital property," but including the increase in value of any such property).

Pursuant to section 3501(a.1), the increase in value of Husband's nonmarital 401(k) "shall be measured from the date of marriage … to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever results in a lesser increase." 23 Pa.C.S. § 3501(a.1). Husband was unable, however, to establish the date-of-marriage value of this account. In fact, he was only able to produce a statement

indicating a value of $23,530.49, as of September 18, 2008. **See** Master's Report at 12 ¶13, 41 (citing Husband's Exhibit 13). Husband testified that the 401(k) funds were then transferred into an American Funds IRA in his name, which increased in value to $130,958.55, by September 30, 2019, shortly before the commencement of the equitable distribution hearings. **Id.** at 12-13 ¶13, 41 (citing Husband's Exhibit 15). **See also** Husband's Brief II at 7-8. For purposes of equitable distribution, the Master excluded $23,530.49 as premarital and calculated the increase in value of the account as the difference between the September 30, 2019 value and the September 18, 2008 value ($130,958.55 − $23,530.49 = $83,793.91). Master's Report at 41.

The trial court accepted the Master's calculation and treated $23,530.49 as a premarital asset, explaining that "while it is unfortunate" Husband was unable to produce the date-of-marriage value, "the Master … did not believe the withholding of this information was intentional on the part of the Husband." TCODD at 10-11. Moreover, while the value of Husband's 401(k) as of the marriage date is unknown, the court opined,

> it is reasonable to believe that it is less than the [September 18, 2008] figure used for purposes of equitable distribution. How much less, we do not know. If we assume, for sake of argument, that the account doubled in value from 1998 to 2008[,] then the increase in value would be approximately $11,765.00. Wife's half share of this increase in value would be $5,882.00. This is a small amount in light of the entire marital estate the Master was charged to equitably divide. The jurist believes the Master appropriately exercised her discretion when fashioning the overall distribution scheme. This [c]ourt will not disturb the Master's findings in this regard.

*Id.*

Wife claims that in excluding the September 18, 2008 value of $23,530.49 as a premarital asset, the trial court erred and abused its discretion, as this amount "clearly include[s] post-marriage earnings and contributions, which would be marital and subject to distribution." Wife's Brief I at 16. She contends that the entire September 30, 2019 value of the 401(k) should be deemed marital, and that she "should be awarded a credit since Husband could not meet his burden in establishing the actual date[-]of[-]marriage value of the 401(k)." *Id.* at 19. Additionally, Wife claims she was entitled to her 50% equitable share of the $11,765.00 increase in value of the marital portion of Husband's 401(k), as calculated by the trial court. *Id.* at 19, 21. Wife has failed to convince us that she is entitled to any relief on these claims.

A trial court has broad discretion when fashioning an award of equitable distribution. *Dalrymple*, 920 A.2d at 1280. Based on our review of the record, the trial court clearly accounted for the significant increase in value of Husband's 401(k), from September 18, 2008 through September 30, 2019 ($83,793.91), within its equitable distribution scheme. *See* TCODD at 13. The trial court emphasized that the $5,882.00 amount was only an estimate used in its opinion "to indicate how relatively small Wife's share" of any increase in value from the date of marriage to September 18, 2008 would have been. *See* Amended TCO at 6 ¶2. Although only speculative, the trial court found this amount "to be insignificant to the distribution scheme in light

- 21 -

of the overall total of the marital assets and agreed with the approach taken by the Master of not assigning a specific value to the increase." *Id.* We discern no abuse of discretion in the trial court's decision to follow the Master's recommendation regarding the treatment of Husband's 401(k) for the purpose of equitable distribution in this matter. *See Trembach*, 615 A.2d at 36 (noting that we look at the distribution as a whole, in light of the court's overall application of the 23 Pa.C.S. § 3502(a) factors, rather than find a basis for reversal in the court's application of a single factor).

Accordingly, we affirm the March 15, 2021 decree in divorce issued by the trial court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/8/2022